THIS CASE HAS NOT YET BEEN SCHEDULED FOR ORAL ARGUMENT
No. 14-7075

═══════════════════════════════════════════════════════════

*In the*
UNITED STATES COURT OF APPEALS
*for the*
DISTRICT OF COLUMBIA CIRCUIT
_____

SAIMA ASHRAF-HASSAN,

*Plaintiff-Appellee,*

v.

EMBASSY OF FRANCE,

*Defendant-Appellant*

*On Appeal from a Decision of the United States District Court for the District of Columbia in 11-805 (Hon. Judge James E. Boasberg)*

_____

BRIEF FOR APPELLANT
_____

PIERRE M-P CHONÉ
Law Office of Pierre Choné P.L.L.C.
206 9th Street SE
Washington, DC 20003
(202) 543-3066
pchone@cabinetchone.com
Attorney for Defendant-Appellant

VALENCIA R. RAINEY
Law Offices of Gary Gilbert & Associates
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
(301) 608-0880
vrainey@ggilbertlaw.com
Attorney for Plaintiff-Appellee

# TABLE OF CONTENTS

PARTIES AND AMICI ...................................................................I

RULINGS UNDER REVIEW ........................................................I

RELATED CASES ........................................................................I

GLOSSARY OF ABBREVIATIONS ..........................................IV

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION...............................................................................1

STATEMENT OF THE ISSUES......................................................2

RELEVANT STATUTE...................................................................3

STATEMENT OF THE CASE ........................................................4

SUMMARY OF ARGUMENT ......................................................11

ARGUMENT .................................................................................13

I.  THE EMBASSY OF FRANCE WITHDREW ITS WAIVER OF
IMMUNITY IN ACCORDANCE WITH THE TERMS OF ITS WAIVER,
AND CHOOSING U.S. LAW, SPECIFICALLY FOR THE APPLICATION
OF THE CONTRACT, DOES NOT CONSTITUTE AN IMPLIED WAIVER
SINCE IT DOES NOT NECESSARILY REQUIRE A ROLE FOR U.S.
COURTS. ......................................................................................13

   A.   THE EMBASSY PROPERLY WITHDREW ITS WAIVER IN ACCORDANCE WITH THE
   CONDITION CONTAINED IN ITS WAIVER. .............................................................13

   B.   CHOOSING U.S. LAW ONLY FOR THE APPLICATION OF THE EMPLOYMENT
   CONTRACT DOES NOT CONSTITUTE AN IMPLIED WAIVER OF IMMUNITY SINCE IT DOES
   NOT CALL FOR, NOR REQUIRE, A ROLE FOR U.S. COURTS. .......................................16

   C.   ASSUMING THAT CHOOSING U.S. LAW FOR THE APPLICATION OF THE
   CONTRACT AMOUNTS TO AN IMPLIED WAIVER, SUCH A WAIVER IS INAPPLICABLE TO
   ASHRAF'S TORT CLAIMS THAT ARE NOT RELATED TO HER EMPLOYMENT CONTRACT.
   ………………………………………………………………………………..21

II.   BASED ON THE STANDARD OF REVIEW FOR IMMUNITY
CLAIMS, AS WELL AS FOR SUMMARY JUDGMENT MOTIONS, THE
LOWER COURT HAD AN OBLIGATION TO WEIGH THE
CONSEQUENCES OF ASHRAF'S CONTRADICTORY STATEMENTS
AND HER FAILURE TO PROVIDE ANY EVIDENCE ON THE
EMBASSY'S VICARIOUS LIABILITY............................................23

**III.  CONTRACT-RELATED TORTS ARE ACTIONABLE UNDER THE COMMERCIAL EXCEPTION ONLY IF THE CONTRACT CAN STILL BE ENFORCED. ..................................................................29**

**IV.  THE COURT SHOULD EXERCISE PENDENT JURISDICTION OVER THE EMBASSY'S MOTION FOR SUMMARY JUDGMENT SINCE IT PRESENTS A LEGAL ISSUE THAT HAS BEEN FULLY ILLUMINATED FOR A DECISION THAT WILL RESOLVE ALL CLAIMS................................................................................32**

**V.  THE LOWER COURT'S INTERLOCUTORY DECISIONS ARE APPEALABLE UNDER THE COLLATERAL DOCTRINE BECAUSE THEY PREVENTED THE EMBASSY FROM SHOWING THAT FSIA'S COMMERCIAL EXCEPTION DID NOT APPLY AND BECAUSE THEY RAISE AN ISSUE THAT WILL BE EFFECTIVELY UNREVIEWABLE AFTER A TRIAL.....................................................36**

    A.  THE LOWER COURT'S INTERLOCUTORY DECISIONS ARE APPEALABLE BECAUSE THEY PREVENTED THE EMBASSY FROM SHOWING THAT THE COMMERCIAL EXCEPTION TO ITS IMMUNITY CEASED TO APPLY......................................................36

    B.  THE LOWER COURT'S INTERLOCUTORY DECISIONS ARE APPEALABLE BECAUSE THEY RAISE AN IMPORTANT AND SEPARATE ISSUE THAT WILL BE EFFECTIVELY UNREVIEWABLE AFTER A FINAL JUDGMENT. .............................................................38

**CONCLUSION..................................................................................40**

**CERTIFICATION.............................................................................41**

**CERTIFICATE OF SERVICE ........................................................42**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Counsel for Appellant, the Embassy of France, certifies the following:

**Parties and Amici**

The names of the parties to this appeal are the French Embassy in Washington, D.C. representing the government of France, and Saima Ashraf-Hassan, a former employee of the Embassy of France. There are no other interested parties. No brief of an amicus curiae is expected.


**Rulings under Review**

This case is before the Court on appeal from an order of the United States District Court for the District of Columbia that denied the Appellant's motion to dismiss for lack of subject matter jurisdiction. The order and memorandum opinion of the trial court were filed on April 17, 2014, Appendix p. 210-223, and are reported at Ashraf-Hassan v. Embassy of France in the United States, 2014 U.S. Dist. LEXIS 53293 (D.D.C. Apr. 17, 2014). Pendent and collateral appellate review is also sought regarding the lower court's denial of the Embassy's Motion for Summary Judgment, Motion to Reopen Discovery and Motion to Admit Statement, respectively, at Appendix p. 169, 159, 206. The order denying the motion for summary judgment is reported at Ashraf-Hassan v. Embassy of France in United States, 999 F. Supp. 2d 106 (D.D.C. 2013).


**Related Cases**

Counsel knows of no related cases pending before this Court or any other court.

/s/
_____

Pierre Choné
Attorney for Appellant

i

TABLE OF CITATIONS

## Cases

*Ben-Kotel v. Howard Univ., 319 F.3d 532 (D.C. Cir. 2003) ................................25

Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F.2d 312 (D.C. Cir. 1985)............................................................................................................................32

Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999).............................25

Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949) ..........................36

Consarc Corp. v. Iraqi Ministry, 27 F.3d 695 (D.C. Cir. 1994) ..............................32

Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978).............................................36

Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118 (D.C. Cir. 1999) ..........................................................................................................................19

Eckert Int'l v. Government of the Sovereign Democratic Republic of Fiji, 32 F.3d 77 (4th Cir. Va. 1994) ......................................................................................20

*El-Hadad v. United Arab Emirates, 496 F.3d 658 (D.C. Cir. 2007) ......... 1, 31, 37

Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d 438 (D.C. Cir. 1990).27

Gilda Marx, Inc. v. Wildwood Exercise, Inc., 85 F.3d 675  (D.C. Cir. 1996) ........32

*Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (U.S. 2004).............29

Haynes v. Williams, 392 F.3d 478 (D.C. Cir. 2004) ..............................................25

Johnson v. Jones, 515 U.S. 304 (U.S. 1995).........................................................39

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020 (D.C. Cir.1997) .................................................................................................................. 27, 32

Lash v. Lemke, 2013 WL 5291396 (D.D.C. Sept. 20, 2013) ................................25

Lee v. Ply Gem Industries, Inc., 193 U.S. App. D.C. 112 (D.C. Cir. 1979) ..........32

Libra Bank Ltd. v. Banco Nacional de Costa Rica, 676 F.2d 47 (2d Cir. 1982).....14

Maritime International Nominees Establishment v. Republic of Guinea, 693 F.2d 1094 (D.C. Cir.1982) ........................................................................... 18, 20

Marlowe v. Argentine Naval Comm'n, 604 F. Supp. 703 (D.D.C. 1985) ..............20

Masonry Masters v. Nelson, 105 F.3d 708 (D.C. Cir. 1997)...................................13

Owens v. Republic of the Sudan, 531 F.3d 884 (D.C. Cir.2008)...........................37

*Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36 (D.C. Cir. 2000) 27, 28, 33

Prakash v. American University, 234 U.S. App. D.C. 75 (D.C. Cir. 1984)............27

*Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir.2002) ................................................................................................................... 21, 22

Proctor v. State Farm Mut. Auto. Ins. Co., 561 F.2d 262 (D.C. Cir. 1977) ............25

Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992)...............................21

*Rogers Corp. v. EPA, 275 F.3d 1096 (D.C.Cir.2002) .........................................25

Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011)........25

*Scott v. Harris, 550 U.S. 372 (2007) ................................................. 25, 26, 27, 33

*The Sapphire, 78 U.S. (11 Wall.) 164, 20 L. Ed. 127 (1870)...............................22

Themis Capital, LLC v. Democratic Republic of Congo, 881 F. Supp. 2d 508 (S.D.N.Y.2012) ...............................................................................................14

Transamerica S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998 (D.C. Cir. 1985).................................................................................................................19

United States v. Hollywood Motor Car Co.,458 U.S. 263 (U.S.1982) ..................36

*Vance v. Ball State Univ., 133 S. Ct. 2434 (2013)................... 9, 15, 24, 26, 27, 33

Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983) .........................21

Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354 (2d Cir. 1964)..............................................................................19

World Wide Minerals, LTD. v. Republic of Kaz., 296 F.3d 1154 (D.C. Cir. 2002) ...........................................................................................................................14

## Statutes

28 U.S.C. §1606.....................................................................................................39

28 U.S.C. §1608.....................................................................................................39

28 U.S.C. §1610.....................................................................................................39

28 USC §1330.....................................................................................................1, 39

28 USCS §1605(a) (1)....................................................................... 13, 14, 23, 30

42 U.S.C. 2000e-1..................................................................................................34

## Other Authorities

H.R. Rep. 94-1487 ................................................................................................31

Lori Fisler Damrosch, Foreign States and the Constitution, 73 VA. L. Rev. 483 (1987) ...............................................................................................................21

\* REFERS TO MAJOR CASES RELIED UPON

# GLOSSARY OF ABBREVIATIONS

<u>Term</u>                       <u>Reference</u>

EEOC                      Equal Employment Opportunity Commission

FSIA                      Foreign Sovereign Immunity Act

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Embassy of France appeals to this Court to review and set aside an Order of the United States District Court for the District of Columbia that denied the Embassy's motion to dismiss for lack of subject matter jurisdiction based on its immunity.  A denial of a claim of immunity is "subject to interlocutory appeal under the collateral order doctrine."  El–Hadad v. United Arab Emirates, 216 F.3d 29, 31 (D.C.Cir.2000).

In the interest of fairness and efficiency, the Court should also take pendent jurisdiction over the lower's court denial of the Embassy's motion for summary judgment since it presents a question of law and its resolution might terminate all claims.

Venue was invoked pursuant to 28 USC §1330 and personal as well as subject matter jurisdiction pursuant to the Foreign Sovereign Immunity Act, 28 U.S.C. 1602, hereinafter "FSIA".

## STATEMENT OF THE ISSUES

I. Whether the Embassy of France implicitly waived its sovereign immunity for Ashraf's tort claims (a) by filing a responsive pleading that reserved its right to raise its immunity later and/or (b) by stating in Ashraf's employment contract that, for its application, the contract would be subject to local law.

II. Whether the lower court improperly denied the Embassy's claim of immunity by refusing to engage, before trial, in factual and legal determinations related to its immunity.

III. Whether the lower court lost subject matter jurisdiction for Ashraf's tort claims when it found that the Embassy's underlying commercial activity was no longer actionable.

IV. Whether the Court may also have pendent jurisdiction, in the interests of fairness and efficiency, over the lower court's denial of the Embassy's motion for summary judgment, and assuming pendent appellate jurisdiction is exercised, whether the district court erred.

V. Whether interlocutory decisions of the lower court that (1) denied the French Embassy the means to show that the FSIA commercial exception did not apply and (2) created the appearance of an unfair trial are immediately appealable under the collateral order doctrine, and assuming they are immediately appealable, whether the district court's interlocutory decisions were incorrect.

## RELEVANT STATUTE

28 U.S.C. § 1605. General exceptions to the jurisdictional immunity of a foreign state

  (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

    (1)  in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

    (2)  in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

                                    * * *

    (5)  not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

        (A)  any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

        (B)  any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or . . .

## STATEMENT OF THE CASE

Ashraf was employed by the Embassy of France from early 2002 to January 31, 2007.  This case first started on July 6, 2007, when Ashraf filed a complaint with the Equal Employment Opportunity Commission, hereinafter "EEOC", raising wrongful termination claims as well as harassment claims.  The Embassy was unaware of the EEOC filing and did not receive notice of it until March 15, 2008, due to alleged mishandlings by the EEOC.  (Complaint, Appendix p. 20, ¶8).  There is no evidence in the record to show that the Embassy was aware or should have been aware of Ashraf's EEOC filings before March 15, 2008.  The EEOC initially dismissed Ashraf's complaint but reopened its decision to conduct a second investigation.  On January 31, 2011, the EEOC affirmed its initial dismissal and reissued a right to sue letter.  In her EEOC complaint, Ashraf had raised specific allegations of harassment only against her last superior, Christian Tual.  In her complaint, filed before the U.S. District Court for the District of Colombia on April 29, 2011, hereinafter the "Complaint", Ashraf renewed her claims for wrongful termination and harassment.  However, in the Complaint, her allegations of harassment were no longer limited to her last superior, Tual, but also contained a litany of new allegations against her prior two superiors, including an allegation that she was subjected to a one-hour contraception lecture when she reported her pregnancy on April 16, 2002.

Along with its answer to the Complaint, the Embassy filed a motion to dismiss.  In that motion, the Embassy acknowledged that Ashraf was not a civil servant nor employed in governmental activities and her action — which at that time included a wrongful termination/breach of contract claim — appeared to be related to her employment contract.  Accordingly, the Embassy conceded that, at that time, Ashraf's claims were arguably related to the Embassy's commercial activity.  However, the Embassy also expressly reserved the right to raise an immunity defense at a later stage.  (Appendix p. 109).  On July 20, 2012, the lower court dismissed all claims for wrongful termination because of untimeliness.  However, the lower court did not dismiss the harassment claims, as it found that the last alleged act of harassment may have occurred within the six-month window to file with the EEOC.  (Docket Entry #19, p. 11-12).

The case proceeded to discovery that lasted until June 17, 2013.  The Embassy cooperated fully with Ashraf's discovery requests, including the deposition of a member of its diplomatic staff.  Ashraf did not file any motion to compel.  She filed a motion in limine, which is still pending, to infer negative inferences from the fact that the Embassy deleted email accounts of some alleged harassers.  (Docket Entry 30).  Notably, the Embassy deleted the accounts pursuant to French law, several months after the termination of Ashraf's employment and without any knowledge of her EEOC filings or intention to sue.  (Opposition to

Motion for Negative Inferences, Docket Entry 31).  There is also no
contemporaneous evidence in the record to show that Ashraf ever complained of,
or even commented about, being subjected to any Title VII harassment during her
employment.

The Embassy's discovery did not proceed as smoothly.  The Embassy had to
file several motions to compel discovery from Ashraf.  The court granted the
Embassy's motions in part and denied them in part.  It granted the Embassy's
Motion to compel the production of Ashraf's calendars.  (Transcripts of Hearing of
June 19, 2013, Appendix p. 143-146).  However, the district court refused to
compel Ashraf to produce her medical records regarding a visit of April 16, 2002.
(Appendix p. 139-143).

The Embassy contends that discovery was necessary to determine whether
Ashraf's initial superior was displeased with her because she was pregnant — as
she claims in her Complaint — or because Ashraf failed to timely inform her
employer about her pregnancy as Ashraf implied in a contemporaneous letter she
sent to the Ambassador.  (Undisputed Facts, Docket 32, Exh. 1, ¶20).  In order to
be eligible for the four-month pregnancy paid-leave, an employee has to inform the
Embassy of her pregnancy status before the end of the third month.  (Undisputed
Facts, Docket 32, Exh. 1, ¶11).  Thus, a key issue in this case is when Ashraf
discovered and reported her pregnancy.  During her deposition, Ashraf testified at

length that she is certain that, during the alleged lecture on contraception of April

16, 2002, her superior could not have asked the question "when did you discover

your pregnancy?"  She further testified that the reason she is so sure that the

question could not have been posed then is that the alleged lecture on contraception

happened as a result of her telling her superior that she had just discovered her

pregnancy a few hours earlier during a medical visit.  However, in a letter written

immediately after the alleged lecture on contraception, Ashraf asserted that she had

discussed her pregnancy with her superior in mid-March 2002, i.e. about a month

earlier.  (Undisputed Facts, Docket 32, Exh. 1, ¶6-23 and Exh. 18).  Thus,

discovery became necessary to determine when Ashraf actually knew of her

pregnancy.  If Ashraf learned of her pregnancy on April 16, 2002, as she now

asserts, Ashraf would have lied in her letter of 2002 in which she claimed to have

discussed it with her superior a month earlier.  This, in turn, would corroborate the

Embassy's argument that Ashraf's superior wanted to terminate Ashraf, not

because she was pregnant, but because "she had lost confidence in [Ashraf]," as

Ashraf wrote in her letter of the same day, for failing to be truthful.  Likewise, if

Ashraf knew of her pregnancy before April 16, 2002, it would show that Ashraf is

now fabricating a false reason for why the timing of her pregnancy discovery could

not have been the subject of the alleged lecture.  (Transcript of Bench Motion for

Discovery, June 19, 2013, Appendix p. 138-143; Written Motion, Docket #40; and

Transcript of Hearing of December 17, 2013, Appendix p. 156-159).

Ashraf has never contested that she offered conflicting testimonies, nor has she offered any explanation for them.  In her opposition to the motion for discovery, Ashraf argued only that her contradictory statements are irrelevant. (Transcript of December 17, 2013, Hearing, Appendix p. 158-159).  The lower court denied the motion because it found "the prejudice and the intrusion outweighs its relevance", (Appendix p. 159 and Appendix p. 141), although it had previously approved and entered into the record a protective order that had been drafted and submitted by Ashraf.  (Minute Order for Protective Order, Docket Entry 27).

At the end of discovery, the undisputed facts show that (1) Ashraf received good evaluations from all of her superiors as well as their active support for several promotions she obtained during her employment, (2) there is no documentation or witness regarding any specific act of Title VII harassment other than a single reference to Ashraf as "the Pashtun" by her last superior on January 3, 2007, which Ashraf interprets as necessarily demeaning, (3) there is substantial documentation of a cordial and professional relationship between Ashraf and her last two superiors, (4) there is no evidence that the last two superiors could be considered "supervisors" as defined by the Supreme Court in order to make the Embassy vicariously liable for their alleged harassment, pursuant to Vance v. Ball State

Univ., 133 S. Ct. 2434 (2013),  and finally, (5) there are statements from Ashraf, contemporaneous as well as recent statements made under oath during discovery, that squarely contradict her allegations, including the grave allegation that one of her superiors lectured her on birth control.  (Undisputed Facts, Docket 32, Exh. 1, and Ashraf's Statement of Undisputed Facts,[1] Docket 34 exhibit 1).

The Embassy moved for summary judgment arguing that Ashraf failed her burden to show any evidence that a Title VII harassment occurred or that the Embassy should be vicariously liable for it.  (Docket Entry 32).  The lower court denied summary judgment since it believed it had no authority to weigh Ashraf's contradictory statements.  (Appendix p. 177-178).  The Embassy filed a motion for reconsideration primarily on the basis of well-established precedents that call for weighing Ashraf's contradictory statements and their effects.  (Appendix p. 187-205).  The lower court declined to reconsider its denial of the motion for summary judgment without providing any analysis of the precedents that call for weighing Ashraf's contradictory statements. (Appendix p. 207).

Finally, the Embassy filed a motion to dismiss for lack of subject matter

---

[1] Although Plaintiff appeared to dispute a substantial number of the undisputed facts offered by the Embassy, in reality, Plaintiff (1) disputed facts not offered, (2) disputed facts without offering any support for her position, or (3) disputed facts by alleging the Embassy mischaracterized her testimony when it simply recited Plaintiff's testimony verbatim.  (Reply to Opposition for Summary Judgment at Docket 35, p. 5-11).

jurisdiction arguing that the FSIA exceptions to its immunity were no longer

applicable. (Docket Entry 51).  The lower court's order and memorandum opinion

denying the motion to dismiss for lack of subject matter is reproduced at Appendix

p. 210-223.

## SUMMARY OF ARGUMENT

At the start of this litigation, the Embassy acknowledged that employing Ashraf to perform secretarial services in the United States was a commercial activity under FSIA and, therefore, its immunity may not apply if Ashraf's claims were based upon it. However, the Embassy also alerted the lower court and Ashraf that it may withdraw its waiver later if this assumption ceased to exist.

At the current stage of the case, all contract claims have been dismissed, and Ashraf is no longer able to show that any Title VII harassment occurred and/or that the Embassy should be vicariously liable for it. Consequently, the FSIA commercial exception ceases to apply and the Embassy properly withdrew its waiver of immunity.

Choosing U.S. law for the application of Ashraf's contract did not constitute an implicit waiver since U.S. law was chosen for a limited purpose and to the exclusion of others.

Should the Court find that the commercial exception continues to apply, the Court should review the lower court's refusal to weigh the effect of Ashraf's contradictory statements since such weighing bears directly on the Embassy's immunity. The requested weighing will show that Ashraf had not been subjected to any Title VII harassment, and even if she had been, no supervisor with sufficient authority to implicate the Embassy's liability was involved.

Additionally, and because the commercial exception is designed for the specific purpose of enforcing contracts and other similar commercial activity, Ashraf's contract-related tort claims are not actionable under FSIA since the contract cannot any longer be enforced.

Independently of the Embassy's waiver of immunity and/or the FSIA commercial exception, the Court should exercise pendent appellate jurisdiction to review the denial of the Embassy's motion for summary judgment. This issue has been fully illuminated before the lower court, it involves a question of law, and pendent review will dispose of all remaining claims. Pursuant to the standard of review for summary judgment motions, pendent review will show that Ashraf failed to show any genuine dispute of facts.

Finally, and should the Court hold that the Embassy must face a trial, the Court should review, under the collateral doctrine, certain interlocutory decisions of the lower court. Collateral review is appropriate and necessary because these interlocutory decisions prevented the Embassy from showing that the commercial exception ceased to apply and/or because they create the perception of an unfair trial which could cause irreparable injuries to the reputation of the United States' judicial system in the world.

**ARGUMENT**

**I.** **The Embassy of France withdrew its waiver of immunity in accordance with the terms of its waiver, and choosing U.S. law, specifically for the application of the contract, does not constitute an implied waiver since it does not necessarily require a role for U.S. courts.**

        A. <u>The Embassy properly withdrew its waiver in accordance with the condition contained in its waiver.</u>

Pursuant to FSIA, immunity can be waived expressly or by implication. 28 USCS §1605(a) (1). The lower court stated, in dicta, "[the Embassy] may have expressly waived its immunity in its initial pleading [by stating in its responsive pleading] 'it is conceded that the Embassy's immunity does not apply in this case'." (Appendix p. 216). However, the Embassy's acknowledgement is immediately followed with a sentence that alerts the lower court and Ashraf that the Embassy "reserves the right to raise its immunity should it be necessary to protect the confidential character of its [governmental] activities." (Appendix p. 109). In view of the following precedents, the Embassy's acknowledgement does not constitute an explicit and unambiguous waiver of its immunity.

"Because we must construe waivers of immunity strictly in favor of the sovereign, a waiver of sovereign immunity is to be read no more broadly than its terms require." <u>Masonry Masters v. Nelson</u>, 105 F.3d 708, 712 (D.C. Cir. 1997) (citation omitted, interpreting a waiver of immunity from the U.S. government).

"In general, explicit waivers of sovereign immunity are narrowly construed

in favor of the sovereign and are not enlarged beyond what the language requires.

. . . A foreign sovereign will not be found to have waived its immunity unless it

has clearly and unambiguously done so." World Wide Minerals, LTD. v. Republic

of Kaz., 296 F.3d 1154, 1162 (D.C. Cir. 2002) (citations omitted). The term

"explicit" has been defined as "not obscure or ambiguous, having no disguised

meaning or reservation. Clear in understanding." Libra Bank Ltd. v. Banco

Nacional de Costa Rica, 676 F.2d 47, 49 (2d Cir. 1982) (citing Black's Law

Dictionary).

  Thus, at the start of our analysis, the "explicit" requirement imposed by

FSIA is questionable. The mere fact that the Embassy acknowledged that its

immunity did not apply at that time but might apply later should make it

impossible to conclude that its waiver was "explicit." At a minimum, the

Embassy's acknowledgment is too ambiguous to be considered "explicit."

  Assuming for the sake of the argument that the Court would find the

Embassy's waiver "explicit," the second inquiry is to determine if the waiver

contained terms for a potential withdrawal. Indeed, the waiver is irrevocable only

"where there is no provision contemplating the future revocation." Themis

Capital, LLC v. Democratic Republic of Congo, 881 F. Supp. 2d 508, 517

(S.D.N.Y.2012) and 28 U.S.C. §1605(a).

  In this case, it cannot be disputed that the Embassy's waiver contained a

provision for future revocation.  Indeed, when the two sentences of the Embassy's waiver are read together, it is clear that the Embassy waived its immunity based on assumptions, reasonably made at the time, and that it would withdraw its waiver if these assumptions would later be proven false.  Namely, at the time of its responsive pleading, Ashraf's claims were breach of contract and contract-related tort claims (Title VII harassment claims) which, according to D.C. Circuit case law were based upon the Embassy's commercial activity.  Thus, defending against those claims is part of the Embassy's governmental activities.  However, since then, the lower court dismissed the contract claims and Ashraf's remaining contract-related tort claims are supported by no evidence other than her testimony that is squarely contradicted by her own contemporaneous statements and communications.  Moreover, and assuming for the sake of the argument that Ashraf had presented some credible corroboration of her Title VII allegations, she has presented no evidence, not even her own testimony, to show that the alleged harassment was made by, or with the knowledge of, a "supervisor" which is a condition precedent for the Embassy's vicarious liability.  Vance, 133 S. Ct. at 2443.  Therefore, at this stage of the case, continuing to defend against Ashraf's allegations of tort claims that ceased to be based on her employment contract can no longer be considered to be part of the Embassy's governmental activity.

The Embassy, to this point, has spent a substantial amount of time and

resources to respond to Ashraf's claims and has also voluntarily given access to Ashraf's attorneys to certain information otherwise protected by its governmental privileges and immunities, such as all documents in the possession of the Embassy in which the name Ashraf appeared as well as the deposition of the Secretary General.  Until the end of discovery, the Embassy had to allow Ashraf to intrude in its governmental activities because her claims appeared to be related to the Embassy's commercial activity.  However, at the end of discovery, this assumption is no longer true.  Undisputed facts, which the lower court has refused to weigh, show that Ashraf has no contract-related claims and/or has failed to show any evidence of the Embassy's vicarious liability.  Thus, additional expenditure of resources, as well as exposure of its governmental activities, in defending this case is no longer legally justified under FSIA.  This lack of legal justification, in the eyes of the Embassy, constitutes an unreasonable intrusion into its governmental activity, and, pursuant to its waiver, a ground to withdraw it.

     B. <u>Choosing U.S. law only for the application of the employment contract does not constitute an implied waiver of immunity since it does not call for, nor require, a role for U.S. courts.</u>

The foregoing analysis may explain why the lower court chose not to rest its order on an explicit waiver but rather on an implied waiver of immunity.  Indeed, the lower court found that the Embassy had implicitly waived its immunity because Ashraf's employment contract included the following provision:  "ce

16

document relève, pour son application, de la législation locale," which the lower court translated "roughly as 'This document relies upon local law for its application'." (Appendix p. 218).

However, taking into consideration the syntax of the French statement, including the punctuation, an accurate translation reads as "this document, for its application, relies upon local law", hereinafter "the Statement". First, we note that the Statement does not refer to local jurisdictions or tribunals for the enforcement of the contract. Second, the enforcement of a contract is a two-step process. The first step is to determine the contract's meaning as it relates to facts that ultimately develop after its execution. For this step, in this case, the parties have chosen unequivocally the local law, i.e., U.S. law.

The second step occurs when the parties to a contract do not agree about the application of the contract to the particular set of facts that ultimately develop. For this second step, the parties to a contract must rely on an authoritative body, be it a court or an arbitration entity, to resolve not only their differences but ultimately to enforce the contract according to what this body believes to be the proper outcome. In this regard, it cannot be said that the Statement reveals any intention on the part of the Embassy to subject itself to the authority of a U.S. court or of an arbitration entity. To the contrary, the Statement is silent in this regard.

Furthermore, when the syntax of the Statement is taken into consideration, it

is clear that the intent of the parties was to limit U.S. law to a particular purpose. Had the Statement been the rough translation offered by the lower court, one could argue that the parties intended U.S. law to apply for all purposes.  However, the setting of the words "for its application" between two commas makes it clear that the Embassy intended to commit to the use of the U.S. law only for one particular purpose to the exclusion of others including for enforcement purposes.  Thus, and at the very least, the Statement cannot be read to infer an unmistakable and voluntary intent on the part of the Embassy to subject itself to the authority of U.S. courts to enforce the contract.  We also note that Ashraf's employment contract is written in French.  Had the Embassy intended the contract to be enforced by U.S. courts one would expect it to be written in English.  Conversely, the fact that it is written only in French shows an intent on the part of the Embassy to have it enforced by a French court.

Unlike an agreement to arbitrate in the United States that automatically includes a role for U.S. courts to enforce the arbitration award, a choice of law clause does not necessarily implicate U.S. courts since U.S. law can be applied by other tribunals outside the United States including France.  See Maritime International Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1103-1104 (D.C. Cir.1982) citing Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354, 363-64 (2d Cir. 1964) (refusing to

find an implied waiver in an arbitration clause because the plaintiff had consistently argued that U.S. courts did not have any role to play in the particular arbitration selected by the parties).

As the lower court recognized: "implied waiver . . . has been construed narrowly . . . and requires clear evidence of the foreign sovereign's intention to dispense with its immunity. (Docket #57 p. 6, citing Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999). Then the lower court cited a concurring opinion for the proposition that a choice of law clause is sufficient to constitute an implied waiver of immunity. Id. (citing Transamerica S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, (D.C. Cir. 1985)). However, the majority decision in Transamerica did not rest on the choice of law clause but on the FSIA commercial exception. Furthermore, although willing to rely on the choice of law clause to find an implied waiver of immunity, the concurring opinion in Transamerica recognized that it would be a novel proposition. Indeed, the concurring opinion explained that the House Committee with jurisdiction over FSIA mistakenly stated in its report to Congress that previous courts had relied on a choice of law clause to imply a waiver since "[i]n fact . . . the case law at the time did not unambiguously establish that principle. Most of the relevant waiver cases decided before enactment of the FSIA focused on the effect of a foreign country's agreement to arbitrate disputes." Transamerica,

767 F.2d at 1005.   See also Maritime International, 693 F.2d at 1102, fn. 13

(noting that "courts have generally assumed that Congress did not endorse the

literal wording of the House Report").

     In support of its order, the lower court also cited Marlowe v. Argentine

Naval Comm'n, 604 F. Supp. 703, 708 (D.D.C. 1985).  However, unlike in this

case, the choice of law provision in Marlowe was comprehensive rather than

reserved for a specific purpose to the exclusion of others.  The court held that "[i]n

the present case, [the foreign sovereign] waived its immunity by stipulating that its

contract with plaintiff's assignor shall be governed by and construed in accordance

with the laws of the District of Columbia."  Id. at 708, emphasis added.  See also

Eckert Int'l v. Government of the Sovereign Democratic Republic of Fiji, 32 F.3d

77, 78 (4th Cir. 1994) for a similar choice of law clause.

     The Embassy's reading of the Statement is further buttressed by the fact that

it is inserted into a contract to be used for all of its local employees whether hired

in non-governmental or governmental activities.  The title of the contract reads

"Contrat d'Engagement pour les Agents de Recrutement Local" which translates as

"Employment Contract for Locally Recruited Agents".  Thus, to draw from the

purposefully circumscribed Statement an unmistakable intent on the part of the

Embassy to waive its immunity would amount to ascribing to the Embassy an

intent to waive its immunity even for those local employees engaged in

governmental activities.  Such a conclusion would not make sense.

   C.  Assuming that choosing U.S. law for the application of the contract
       amounts to an implied waiver, such a waiver is inapplicable to
       Ashraf's tort claims that are not related to her employment contract.

   Finally, should the Court find an implied waiver in Ashraf's employment

contract, such a waiver would be limited to claims related to the contract.  The

waiver would have no effect on Ashraf's remaining claims since they are not Title

VII claims arguably related to the contract and/or the Embassy is not vicariously

liable for the alleged acts of Ashraf's superiors.  Unlike the commercial exception,

where the necessary nexus with the United States is met, jurisdiction in the United

States over the Embassy for claims that it had no reason to expect would be a novel

proposition.  See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 619

(1992), and Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 490 fn.15

(1983) , where the Supreme Court pondered, without deciding, whether the waiver

exception required a connection between the claim and the United States to

provide proper jurisdiction.  Although the Court recently held that foreign nations

are not "persons" entitled to due process under the Fifth Amendment, they can

nevertheless "demand that [the United States] observe international law".  Price v.

Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 97 (D.C. Cir.2002) (citing

Lori Fisler Damrosch, Foreign States and the Constitution, 73 VA. L. Rev. 483,

520 (1987)).  What the Court called a "privilege", i.e., in this case not to be sued in

U.S. courts for a claim it had no reason to expect, "is not to be denied lightly, because to do so 'would manifest a want of comity and friendly feeling.'" <u>Price</u>, 294 F.3d at 98 (citing <u>The Sapphire</u>, 78 U.S. (11 Wall.) 164, 167, 20 L. Ed. 127 (1870)).

 In this case, and at the current stage, the claims directly based on the employment contract — that is the wrongful termination/breach of contract claims — have been dismissed by the lower court. Those claims presented a nexus with the United States. However, that does not mean that, by choosing U.S. law for the application of an employment contract, the Embassy anticipated and/or intended to be sued in the U.S. courts by its non-governmental employees for tort claims that are no longer related to its commercial activities in the United States. We have found no case law to support such a novel proposition. In <u>El-Hadad</u>, the defamation claim of the former employee survived the defendant's sovereign immunity but did so in conjunction with the underlying breach of contract claim which the defamation had allegedly facilitated. <u>El-Hadad</u>, <u>supra</u>.

 If this novel proposition were the law, it would turn upside down the presumption of immunity for all foreign missions who, like the French Embassy, may have confirmed in the employment contracts with their local employees that their contract would be applied according to U.S. law. Such a novel proposition would result in all these foreign missions to have unexpectedly waived their

immunity against any tort claims brought by their current and former non-governmental employees.

In sum, there is nothing in this case to conclude that the Embassy waived its immunity explicitly or by implication. To the contrary, there are solid reasons to find that (1) it retained the right to revoke its waiver given at the beginning of this litigation, (2) it revoked its waiver pursuant to the terms of its reservation, and (3) choosing U.S. law only for the application of its employment contract does not shed any light on whether the Embassy intended to subject itself to the jurisdiction of U.S. Courts for contract claims and even less for tort claims that are unrelated to the contract.

**II.    Based on the standard of review for immunity claims, as well as for summary judgment motions, the lower court had an obligation to weigh the consequences of Ashraf's contradictory statements and her failure to provide any evidence on the Embassy's vicarious liability.**

FSIA grants subject matter jurisdiction to U.S. district courts only when specific exceptions to the sovereign's immunity are met. In this case, other than the waiver of immunity exception, which no longer applies, Ashraf and the lower court relied exclusively on the FSIA commercial exception, 28 U.S.C. §1605(a)(2), as ground for subject matter jurisdiction. (Opposition to Motion to Dismiss, Docket #53 and Memorandum Opinion on Order Denying the Motion to Dismiss, Appendix p. 211).

Initially, Ashraf's tort claims, i.e. Title VII harassment claims, were

arguably related to the Embassy's commercial activity of securing secretarial services through an employment contract.  In essence, Ashraf argued that the tortious conduct of the Embassy's agents led to her wrongful termination and breach of contract which included an implicit promise to protect Ashraf from Title VII harassment.

However, the district court dismissed the wrongful termination claim and, at the end of discovery, the lower court was alerted that the tort claims were no longer related to the Embassy's commercial activity because (1) no jury could find that any Title VII harassment had occurred and/or (2) even if they did occur Ashraf has presented no evidence to show that the alleged harassers were "supervisors" which is a prerequisite to the Embassy's vicarious liability pursuant to the Supreme Court holding in Vance, supra.

These arguments were initially presented to the lower court in the Embassy's motion for summary judgment.  (Docket #32, respectively, p. 26-31 and p. 31-32). The lower court dismissed the Embassy's first argument because it believed that "[o]n a motion for summary judgment, . . . the Court may not make credibility determinations or weigh the evidence."  (Appendix p. 182, citation omitted).  In regard to the Embassy's vicarious liability, the lower court stated, without any analysis of the Embassy's evidence showing that the alleged harassers did not fit the Vance definition of "supervisor", "because the harassment and [Ashraf's]

termination were carried out by her supervisors, who presumptively act on the

Embassy's behalf, Defendant cannot avoid liability at this stage of litigation."

(Appendix p. 171).

In its motion to reconsider, (Appendix p. 187), the Embassy alerted the

lower court that it may have committed an error of law by refusing to weigh, not

Ashraf's credibility, but the effect of Ashraf's contradictory statements.

Specifically, the Embassy stated:

> The parties are in agreement with the legal standard as recited by the Court in its Order. The Embassy wishes, however, to emphasize that all evidence must be considered, including Plaintiff's contradictory statements and that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). See also Lash v. Lemke, 2013 WL 5291396, at 8 (D.D.C. Sept. 20, 2013); "When faced with a plaintiff's previous sworn statement . . . the court should require an explanation of any apparent inconsistency". Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999); Haynes v. Williams, 392 F.3d 478, 485 (D.C. Cir. 2004) citing Rogers Corp. v. EPA, 275 F.3d 1096, 1103 (D.C.Cir.2002) for the proposition that "[t]he possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment"; Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) finding that Plaintiff's interpretation of the record was unreasonable and not sufficient to prevent summary judgment of his title VII claim; Proctor v. State Farm Mut. Auto. Ins. Co., 561 F.2d 262, 276 (D.C. Cir. 1977) holding that "Rule 56 should (not), in effect, be read out of antitrust cases and permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations"; and Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 100 (2d Cir. 2011) (internal citation omitted) holding that "[b]ecause the record shows that this was one of the rare circumstances where the plaintiff relies almost entirely on her own testimony, much of which is contradictory and incomplete, and where the

facts alleged are so contradictory that doubt is cast upon their plausibility, we hold that the District Court properly made a limited assessment of the evidence Rojas offered in opposition to summary judgment and concluded that no reasonable jury could believe it." (Appendix p. 188-189).

The Embassy also reminded the lower court of Ashraf's failure to provide any evidence, not even her own testimony, to show, pursuant to the Vance holding, that her last superior had the necessary authority over her employment to make the Embassy vicariously liable for any alleged harassment. (Appendix p. 203-205). In its opposition to the motion for reconsideration, Ashraf did not address her failure to provide any evidence of the alleged harasser's employment authority nor offer any explanation for her contradictory testimonies on the alleged Title VII harassment. (Docket #42).

In its denial of the motion to reconsider, the lower court reiterated its belief, without any analysis of the Supreme Court holdings in Scott, that it does not have the authority "to make credibility determinations or weigh the evidence at this stage." (Docket #45 p. 3). Similarly, the court provided no explanation or analysis as to why the Embassy should be vicariously liable in view of the Vance holding and the Embassy's evidence showing that the alleged harassers were not Ashraf's "supervisors".

Finally, in its reply to Ashraf's opposition to the motion to dismiss for lack of subject matter jurisdiction, the Embassy alerted the court that, in addition to the Supreme Court's holdings in Vance and Scott, it also had to conduct the requested

weighing of the evidence because it would buttress the Embassy's immunity. "When the [foreign sovereign] has thus challenged the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff". Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). See also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027-1028 (D.C. Cir.1997) citing Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990), and Prakash v. American University, 234 U.S. App. D.C. 75 (D.C. Cir. 1984) for the proposition that "where the motion to dismiss is based on a claim of foreign sovereign immunity, . . . , the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case before trial." (Docket #54, p. 4).

In spite of the Embassy's repeated requests for an analysis of the two Supreme Court holdings, Vance and Scott, and the Phoenix decision of this Court — all directly bearing on the court's obligation, for different reasons, to weigh the evidence or lack thereof — the lower court has offered none. See the Embassy's last request in its motion for reconsideration of the denial of its motion to dismiss for lack of subject matter jurisdiction. (Docket #58, p. 2).

The Supreme Court holdings are clearly applicable to this case. In fact, Ashraf has not disputed their relevance in this matter. Vance, the most recent

decision, limits an employer's vicarious liability for alleged harassment of one of

its employees only to harassment perpetrated by employees empowered with clear

authority, such as hiring and terminating authority. In this case, the undisputed

evidence shows that Tual, the last alleged harasser, had no such authority. Ashraf

simply ignored the Supreme Court decisions although they are particularly

compelling considering that the <u>Phoenix</u> decision requires the same weighing of

the evidence for immunity purposes. Whereas the Supreme Court decisions aim at

screening and eliminating unnecessary trials, the <u>Phoenix</u> decision is mainly

concerned with the equally important goal of subjecting a foreign sovereign to a

U.S. court's jurisdiction only if its immunity does not apply. These two

independent considerations squarely contradict the lower court's belief that it had

no authority to weigh Ashraf's contradictory statements or her failure to provide

evidence on the Embassy's vicarious liability.

The Embassy therefore respectfully requests that the Court find that the

lower court committed an error of law by refusing to weigh the evidence and/or

lack thereof that directly bears on its subject matter jurisdiction. It is a well-

established principle that "a court's subject-matter jurisdiction cannot be expanded

to account for the parties' litigation conduct. A litigant generally may raise a

court's lack of subject-matter jurisdiction at any time in the same civil action, even

initially at the highest appellate instance." <u>Grupo Dataflux v. Atlas Global Group,</u>

L.P., 541 U.S. 567, 576 (U.S. 2004).

Since the Court has de novo jurisdiction over subject matter jurisdiction, the Embassy respectfully requests that it weigh (1) the effect of Ashraf's contradictory statements on whether she was subjected to Title VII harassment and (2) her failure to provide any evidence on the Embassy's vicarious liability. For this purpose, the Embassy incorporates herein its motion for reconsideration of the denial of its motion for summary judgment. (Appendix p. 187-205). The Embassy respectfully submits that a proper weighing of the evidence will show that the lower court lost subject matter jurisdiction since the conditions for the commercial exception to the Embassy's immunity are no longer met. At the end of discovery, Ashraf is unable to substantiate any actionable tort claims, her wrongful termination claims have been dismissed, and, under Supreme Court precedent, the Embassy cannot be vicariously liable. FSIA commercial exception is therefore no longer applicable to grant subject matter jurisdiction.

### III.    Contract-related torts are actionable under the commercial exception only if the contract can still be enforced.

Independent of the foregoing analysis, the Embassy respectfully submits that subject matter jurisdiction disappeared when the lower court dismissed the wrongful termination and breach of contract claims.

FSIA's commercial activity exception grants subject matter jurisdiction only when the action is based upon a sovereign's commercial act or activity. 28 U.S.C.

29

1605(a) (2).  Initially, Ashraf's tort claims, i.e., harassment, were arguably related to the Embassy's commercial activity of securing secretarial services through an employment contract because Ashraf had claimed that the alleged tortious conduct of the Embassy's agents led to her wrongful termination and breach of contract which included an implicit promise to protect her from Title VII harassment.

However, and since the lower court dismissed all of Ashraf's contract claims, the question is being posed as to whether Ashraf's tort claims may continue to proceed alone and in isolation from the Embassy's commercial activity.  Doing so would clearly frustrate and eliminate the consequences of the dismissal of the contract claims.

It is clear that Congress did not intend to create an exception to sovereign immunity for all torts.  To the contrary, FSIA carved out narrow exceptions only for those torts that are either connected to a commercial activity or those that caused "personal injury or death, or damage to or loss of property".  28 U.S.C. 1605(a) (5).  Furthermore, Congress specifically excluded from the personal injury exception torts for "malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights".  28 U.S.C. §1605 (a) (5) (A) & (B).  Assuming that Congress intended to include in the personal injury exception the type of personal injuries that Ashraf initially asserted in her Complaint, such as emotional distress, this is a non-issue since she is no longer

able to make such a claim. Ashraf has admitted that she never consulted any physician for such injuries and she has not provided any description or documentation of such injuries in response to the Embassy's interrogatories. Furthermore, Ashraf has never argued that subject matter jurisdiction could be based on the personal injury exception of FSIA. (Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket # 53).

Thus, although defamation claims are expressly excluded from the FSIA personal injury exception, the El Hadad plaintiff was allowed to pursue it because the sovereign defendant did not dispute that the defamation was related to his underlying employment contract. El-Hadad, 496 F.3d at 663. Conversely, such a defamation claim would have been dismissed had the El Hadad plaintiff no longer been able to allege an underlying breach of contract.

FSIA's clear goals to provide an effective enforcement tool to those who enter into commercial relationships with sovereigns in the United States and, on the other hand, to create a very limited exception for certain types of torts (none of which is present in this case), compel the conclusion that this novel issue should be decided in favor of the Embassy. (See H.R. Rep. 94-1487 p. 6-7). Since Ashraf's claim for wrongful termination based on the contract is gone, the entire ground for the FSIA commercial exception is no longer present.

**IV.    The Court should exercise pendent jurisdiction over the Embassy's motion for summary judgment since it presents a legal issue that has been fully illuminated for a decision that will resolve all claims.**

"A circuit court exercises pendent jurisdiction when, in the course of reviewing an order from which an appeal is within its jurisdiction, it hears an appeal from another order that, while part of the same case or controversy, would not otherwise be within its statutory jurisdiction." Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d at 1026, citing Gilda Marx, Inc. v. Wildwood Exercise, Inc., 85 F.3d 675, 678  (D.C. Cir. 1996); see also Consarc Corp. v. Iraqi Ministry, 27 F.3d 695, 700 (D.C. Cir. 1994); Lee v. Ply Gem Industries, Inc., 193 U.S. App. D.C. 112 (D.C. Cir. 1979), cert. denied, 593 U.S. 1266 (1979).

In Jungquist, the Court explained that pendent appellate jurisdiction was not reserved exclusively to claims "so closely related that review of the former is necessary to, or will dispose of, review of the latter." Jungquist, 115 F.3d at 1027 citing Gilda Marx, 85 F.3d at 679.  The main consideration is whether the merits of the pendent issue have been "sufficiently illuminated to enable decision by the court of appeals without further trial court development.  Any other rule frequently would require wasted litigation without any offsetting advantage in economy of appellate effort or uninterrupted trial court proceedings." Id. citing Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F.2d 312, 315 (D.C. Cir. 1985).

The Embassy respectfully submits that the foregoing condition for pendent

jurisdiction of the lower court's denial of its motion for summary judgment is met in this case. The issue has been fully illuminated through several pleadings from both parties. Furthermore, the issue does not rest on factual disputes but on whether or not the Supreme Court decisions in <u>Vance</u> and <u>Scott</u>, as well as the Court's <u>Phoenix</u> decision, are applicable in this case. If they are, the Embassy respectfully submits that the Court should find that there is no issue of fact in this case and its motion for summary judgment should be granted.

Ashraf may argue that her pending motion for negative inference which the court has refused[2] to rule upon presents additional work to be done by the lower court. If such were the case, the Embassy respectfully requests that the Court take pendent jurisdiction over this issue as well since it will not require any additional factual development to be done by the lower court. In fact it has been briefed twice by Ashraf.

Ashraf rests her request for negative inferences on the fact that the email accounts of some of her superiors at the Embassy were deleted about two years after her termination of employment. She specifically asked the lower court to

---

[2] The court initially dismissed Ashraf's motion without prejudice to resubmit it before trial. (Docket 37 p. 17). Ashraf resubmitted it on January 31, 2014. One week before the pretrial conference and about a month before the trial date, the lower court had not yet issued a ruling. During the hearing of March 11, 2014, as well as in its motion for reconsideration of the denial of its motion to dismiss, the Embassy prayed the lower court to issue a ruling on Ashraf's motion for negative inferences which the court declined to do.

infer that the missing emails would have shown that (1) the Embassy was aware of the harassment before her termination, (2) her superiors "routinely referred to her in a derogatory manner by email", and (3) the Embassy "failed to adequately respond to Ashraf's complaint". (Docket 30, p. 2 and Docket 46). Ashraf contends that such inferences are justified because the Embassy was aware of her harassment complaint when it deleted the email accounts. However, all evidence in the record, except for Ashraf's unsupported allegation, shows that the Embassy was unaware of her complaint of harassment or intention to sue the Embassy until it finally received Ashraf's EEOC complaint on March 15, 2008, more than a year after the termination of her employment and about six months after the deletion of the email accounts of the alleged harassers. Additionally, the Embassy deleted these email accounts pursuant to French law that requires deletion of employees' email accounts upon the end of their employment unless other legal obligations exist. (Docket #31 p. 4-5). We note here that employers' actions that are otherwise unlawful under 42 U.S.C. §2000e-2 & e-3 are permissible if undertaken as a result of an applicable foreign law. 42 U.S.C. 2000e-1.

Thus, as for her opposition to the motion for summary judgment, in support for her motion for negative inferences, Ashraf can point only to her own testimony which is contradicted by the record. The Embassy respectfully submits that, once the Court has weighed Ashraf's contradictory testimonies regarding her Title VII

claims, it will inevitably have to conclude that her Title VII allegations are wholly

unsupported.  Consequently, and after having offered false testimony on seminal

issues, Ashraf's bare allegation that the Embassy was aware of her harassment

complaint when it deleted certain email accounts is insufficient to overcome the

overwhelming evidence showing that the Embassy became aware of her intention

to sue about six months later.  Obviously, the last consideration for pendent

jurisdiction, i.e., that the issue might resolve the entire case, is met.  Indeed, the

negative inferences Ashraf is seeking would constitute the only evidence that she

could present at trial besides her contradictory testimonies.

  The Embassy therefore incorporates herein its motion for summary

judgment, its motion to reconsider denial of its motion for summary judgment, as

well as its opposition to Ashraf's motion for negative inferences, and respectfully

requests the Court to conduct a de novo review and issue its rulings.  (Docket 38 &

31).  The seminal issue regarding the Embassy's motion for summary judgment is

whether or not the <u>Scott</u> and <u>Vance</u> Supreme Court decisions as well as the

<u>Phoenix</u> decision of this Court compelled the lower court to weigh the effect of

Ashraf's contradictory testimonies as well as her failure to provide evidence on the

Embassy's vicarious liability.  For reasons stated in its motion for reconsideration,

which Ashraf has not challenged, the Embassy respectfully submits that the answer

to this legal issue is unequivocally yes.  In turn, the weighing of this evidence will

show (1) that no jury could find that Ashraf had been subjected to any Title VII

harassment and (2) that, as a matter of law, the Embassy could not be vicariously

liable for the actions of Ashraf's alleged harassers.  Each of these two conclusions,

independently, compels the granting of the Embassy's motion for summary

judgment.

### V.     The lower court's interlocutory decisions are appealable under the collateral doctrine because they prevented the Embassy from showing that FSIA's commercial exception did not apply and because they raise an issue that will be effectively unreviewable after a trial.

Finally, and should the Court hold that the Embassy must face a trial, the

Embassy respectfully submits that the Court should review the lower court's

collateral orders for the following reasons.

A. The lower court's interlocutory decisions are appealable because they prevented the Embassy from showing that the commercial exception to its immunity ceased to apply.

"[The Supreme Court] has interpreted the jurisdictional statute to permit

departures from the rule of finality in only a limited category of cases . . . [where

the collateral orders] conclusively determine the disputed question, resolve an

important issue completely separate from the merits of the action, and be

effectively unreviewable on appeal from a final judgment." United States v.

Hollywood Motor Car Co.,458 U.S. 263, 265(U.S.1982), citing Cohen v.

Beneficial Industrial Loan Corp., 337 U.S. 541, 545-547 (1949), and Coopers &

Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

Consistent with the foregoing Supreme Court decisions, the Court recognized that interlocutory decisions such as the denial of a motion for discovery, denial of a motion for admission of certain evidence, and refusal to weigh Ashraf's credibility and failure to provide certain evidence are usually not subject to immediate appeal. "[B]ut when such a denial subjects a foreign sovereign to jurisdiction, the order is subject to interlocutory appeal under the collateral order doctrine." Owens v. Republic of the Sudan, 531 F.3d 884, 887 (D.C. Cir.2008) citing El-Hadad v. United Arab Emirates, 216 F.3d at 31.

Each of the foregoing interlocutory decisions prevented the Embassy from showing conclusively that the FSIA commercial exception was no longer applicable. The denial of the motion for limited discovery prevented the Embassy not only from showing that Ashraf had not been subjected to a lecture on contraception but that her allegation may have been the result of a whole cloth fabrication rather than a faulty memory. Likewise, the denial to admit certain statements of Ashraf's attorney prevented the Embassy from showing that Ashraf's superior did not tell her that she and her children were dogs but simply that her children are not invited to his house because his wife does not allow children and dogs into her house. Finally, as discussed previously, the refusal to weigh Ashraf's contradictory testimonies and her failure to provide evidence on the Embassy's vicarious liability prevented it from showing that Ashraf had not been subjected to

any Title VII harassment or any other actionable contract-related tort.

Thus, and should the Court hold that the Embassy has properly reserved the right to withdraw its waiver of immunity and is still undecided about whether Ashraf's claims are related to the Embassy's commercial activity, these interlocutory orders should be reviewed under the collateral doctrine.

B. The lower court's interlocutory decisions are appealable because they raise an important and separate issue that will be effectively unreviewable after a final judgment.

A more difficult question is presented if the Court were to find that the Embassy had irrevocably waived its immunity. However, even under this scenario, these collateral orders call into question a very important issue that is separate from the merits and which will be effectively unreviewable after a final judgment. The issue is whether, under the principle of comity, foreign missions are entitled, in the United States, to some kind of protection against unfounded and salacious accusations, or whether they should choose between settling meritless claims or subjecting their reputation to permanent damage through an unfair procedure because a lower court committed errors of law that are not immediately appealable. For an ordinary defendant, the Supreme Court has explained that the grave injury exacted on defendants that have to face trial before being able to overturn interlocutory orders are nevertheless not sufficient to create an exception to the rule of finality considering the economic and efficiency benefits that it

provides.  <u>Johnson v. Jones</u>, 515 U.S. 304, 309 (U.S. 1995).  However, in this case, there are two reasons why the <u>Johnson</u> holding is not applicable.

First, in this case, the injury is not felt only by the defendant.  The most substantial injury might, in fact, fall upon the United States in regard to its relationship with the rest of the world which expects a fair application of FSIA. Congress has manifestly acknowledged that foreign sovereigns cannot be treated as ordinary defendants.  Thus, FSIA provides unique protections to foreign sovereigns that are not available to ordinary defendants: 28 U.S.C. §1608 sets a formal and hierarchical scheme of service, longer time to answer a summons, and a higher burden to obtain a default judgment; 28 U.S.C. §1330 bars trial by jury; 28 U.S.C. §§1610 and 1611 provide substantial limitations on attachment; and 28 U.S.C. §1606 prohibits punitive damages.  Allowing collateral appeal of these interlocutory decisions would therefore be consistent with Congressional intent to treat sovereign defendants with special consideration and protections. Furthermore, the injury to France as well as to the United States — caused by forcing the French Embassy to face trial without reasonable means to defend itself and asking it to suffer an adverse judgment on salacious claims before it has the right to show that Ashraf fabricated them — would be, in effect, irreparable.

The second reason is that the negative consequences of allowing such collateral appeals will be limited to a very small number of defendants.  It will be

limited not only to foreign sovereign defendants but only to those who, like the French Embassy, can show interlocutory decisions from the lower court that raise a legitimate question of fairness.

For the foregoing reasons, and should the Court find that the Embassy must face trial, the Embassy respectfully requests a de novo review of these interlocutory decisions so that all will deem such a trial necessary and fair. The Embassy incorporates herein by reference its motion for discovery (Docket #40) and its motion to admit statements from Ashraf's attorney (Docket #39).

## CONCLUSION

The foregoing analysis shows that the choice of law in Ashraf's employment contract does not constitute a waiver of the Embassy's immunity and that the Embassy properly withdrew its initial waiver of immunity pursuant to the condition contained in it. In turn, the only potential FSIA exception to the Embassy's immunity is not applicable in this case since Ashraf is unable to provide any evidence of an actionable contract-related claim.

In the alternative, the Embassy prays the Court to take pendent appellate jurisdiction over the Embassy's motion for summary judgment to find that the lower court erred in refusing to weigh Ashraf's contradictory testimonies which show that there is no genuine issue of fact in this case.

Finally, and if the Court were to find that the Embassy must face a trial, the Embassy respectfully prays the Court to review and overturn two interlocutory decisions of the lower court which severely limit its capacity to defend itself.

Respectfully submitted.

/s/
_____
Pierre Choné
Attorney for Appellant

## CERTIFICATION

I hereby certify that consistent with the Rules of Court the foregoing brief is less than **12,500 words** in content.

/s/
_____
Pierre Choné
Attorney for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2014, I filed the foregoing Brief

through this Court's CM/ECF system, which will send an electronic notice of filing

to the following:

> Valencia R. Rainey, Esq. at vrainey@ggilbertlaw.com
>
> Zach Wright, Esq. at zwright@GGilbertlaw.com  and
> aakmatov@ggilbertlaw.com

A hard copy will be mailed to:
> Ari Micha Wilkenfeld, Esq.
> The Wilkenfeld Law Group
> 1050 Connecticut Avenue, NW
> Suite 1000
> Washington, DC 20036

/s/

_____

Pierre Choné
Attorney for Appellant